UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Crim. No. 20-91 (ADM)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | PLEA AGREEMENT AND |
| ) | SENTENCING STIPULATIONS |
| BRYAN DALLAS CRANDALL, ) | |
| ) | |
| Defendant. ) | |

The parties to this case hereby agree to its resolution on the following terms and conditions. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota. This agreement does not bind any other government agency. The United States is represented by Erica H. MacDonald, United States Attorney for the District of Minnesota, and Robert M. Lewis, Assistant United States Attorney. The defendant, BRYAN DALLAS CRANDALL ("CRANDALL" or "the defendant" herein), is represented by Steven L. Schleicher, Esq. and Eric Olson, Esq.

1. **Charges.** The defendant agrees to plead guilty to an Information charging him in Count 1 with conspiracy to commit wire fraud in violation of Title 18, United States Code, Section 371. The defendant is pleading guilty to this charge because he is guilty of the offense.

2. **Waiver of Indictment.** The defendant agrees to waive indictment for the offense to which he is pleading guilty and execute a Waiver of Indictment form.

3. **Consent to VTC Proceedings.** The defendant understands his right to attend certain proceedings in court, including a change of plea hearing, pursuant to Rule 11 and Rule 32 of the Federal Rules of Criminal Procedure, respectively. However, notwithstanding these rights, the defendant has consulted with his counsel and hereby expressly consents to conducting a change of plea hearing by video/telephone conferencing (VTC). The defendant expressly waives his right to appeal the manner in which his plea will be entered under this procedure.

4. **Factual Basis.** The defendant agrees that the following facts are true and correct and would be proven at trial beyond a reasonable doubt:

> From at least 2013 to 2017, BRYAN DALLAS CRANDALL farmed in the west-central part of Minnesota, growing corn and soybeans. CRANDALL sold harvested grain to elevators in the area. One such elevator was located in Herman, Minnesota and was operated by Cenex Harvest States ("CHS"). CHS paid by the bushel for grain delivered at the elevator. A bushel is a standard unit of measurement used in agriculture. At the time, the delivery was made by driving a truck loaded with grain onto a scale, weighing the loaded truck, having the farmer then dump the grain, and re-weighing the truck. Adjusting for differences in characteristics of the grain such as quality and moisture content, for example, yields a total net number of bushels. The farmers were paid for this amount based on a specified price.
>
> The system in place at the elevator in Herman allowed an elevator employee to manually adjust readings in this process or enter readings without a truck present, and thereby manipulate the records. This was meant to allow the scale operator to correct potential errors in the weighing process.
>
> Sometime not later than August 5, 2013, CRANDALL entered into an agreement and conspiracy with an employee of the

2

elevator in Herman, Minnesota ("co-conspirator A") to defraud CHS by manually manipulating scale readings and entering purported readings where no delivery actually occurred. During the conspiracy co-conspirator A would either manually manipulate the records of loads delivered by CRANDALL to increase the quantity or quality of the delivery, or both, or would create false loads in the name of an account used to pay CRANDALL for grain with no delivery being made. Although the records generated at the elevator did not indicate manual entries, unbeknownst to CRANDALL and co-conspirator A, the manual entries generated a record designated by the letter "k" in separate computerized records of CHS.

CRANDALL and co-conspirator A exchanged text messages during the course of and in furtherance of the conspiracy. The defendant understands that the text messages travelled through various telephone and computer networks, including the networks of the respective individuals' cellular service providers, and such communications travelled in interstate commerce and through a means of interstate communication.

Co-conspirator A died in late 2016. Beginning not later than December 28, 2016, CRANDALL entered into an agreement with another elevator employee, co-conspirator B, to continue the fraud in the same manner. CRANDALL compensated co-conspirator B by giving co-conspirator B checks and cash after being paid by CHS for fraudulent deliveries. The conspiracy continued until on or about April 25, 2017.

Stipulation to loss amount

The parties agree it is not possible at this point to determine the exact loss caused by the fraud because some of the fraudulent loads were partial loads of actual marketable grain but there is no reliable, independent proof of how much and of what quality was delivered. Further, because of the death of co-conspirator A, it is not known to what degree certain manipulations of the scale measurements were performed. Because of these uncertainties and other factors, the parties agree that a reasonable estimate of the loss for purposes of this agreement is $416,389, and the parties stipulate to this amount for the advisory Guidelines calculation and restitution.

3

Between on or about August 5, 2013 and April 24, 2017, in the State and District of Minnesota and elsewhere, the defendant,

**BRYAN DALLAS CRANDALL,**

did knowingly and willfully combine, conspire, and agree with others, specifically, co-conspirator A and co-conspirator B, to commit an offense against the United States, that is, wire fraud, in violation of Title 18, United States Code, Sections 371 and 1343.

In order to effect the object of and in furtherance of the conspiracy, co-conspirators committed and caused to be committed a number of overt acts including, but not limited to, on or about September 22, 2015, the defendant sent a text message to co-conspirator A in which the defendant communicated how much money was being shared with co-conspirator A from a recent fraudulent transaction.

5. **Statutory Penalties.** The defendant understands that Count 1, conspiracy, carries the following maximum statutory penalties:

- a. a term of imprisonment of up to five (5) years;
- b. a criminal fine of up to $250,000.00 or twice the gross gain or loss from the offense, whichever is greater;
- c. a term of supervised release of up to three (3) years;
- d. mandatory restitution to the victim(s) of the offense; and
- e. a special assessment of $100.00, which is due and payable upon sentencing.

6. **Revocation of Supervised Release.** There is no agreement as to the length or conditions of supervised release that the district court will

4



impose in this case. The defendant understands that, if he were to violate any condition of supervised release, he could be sentenced to an additional term of imprisonment up to the length of the original supervised release term, subject to the maximums set forth in 18 U.S.C. § 3583.

7. **Guideline Calculations.** The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551 *et seq.* Nothing in this agreement shall be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The Court will consider the United States Sentencing Guidelines in determining the appropriate sentence, and the parties stipulate as follows:

a. The offense level for Count 1 is 18, including a base offense level 6, U.S.S.G. § 2B1.1(a), and a loss of $416,389 as stipulated between the parties, which adds 12 levels, U.S.S.G. § 2B1.1(b)(1)(H);

b. If defendant (1) testifies truthfully during the change of plea and sentencing hearings, (2) pays the special assessment at or before sentencing, (3) complies with any conditions of pretrial release, (4) cooperates fully during the presentence report, including any asset investigation, (5) fulfills all obligations in this agreement, and (6) commits no other acts inconsistent with acceptance of responsibility, including but not limited to committing new crimes or misconduct, or denying any relevant conduct or otherwise taking a position in the sentencing process inconsistent with acceptance of responsibility, the government will recommend that defendant receive at sentencing a 3-level reduction for acceptance of responsibility, U.S.S.G. § 3E1.1(a);

c. If the defendant is given full credit for acceptance of responsibility, the total adjusted offense level would be 15.

5

8. **Criminal History Category.** The parties believe that the defendant's Criminal History Category is I. If the defendant's Criminal History Category as finally computed at the time of sentencing is different than the parties' belief, the parties may not withdraw from the plea agreement, and the defendant will be sentenced using the Court's computation.

9. **Advisory Guidelines Range and Sentencing Advocacy.** If the adjusted offense level is 15 and Criminal History is Category I, the advisory Sentencing Guideline range will be 18-24 months' imprisonment with an advisory fine range of $7,500 to $75,000. If the defendant complies with this agreement, the government agrees to request a sentence within the advisory Guidelines range. The defendant may argue for any sentence available under law.

10. **Discretion of the Court.** The Guideline stipulations, although binding on the parties, are not binding on the Court. The Court has the sole discretion to determine the applicable sentencing factors and the parties understand and agree that, if the Court determines that different sentencing factors or calculations apply to defendant's offense other than those set forth in this agreement, neither party may withdraw from this agreement.

11. **Restitution Agreement.** The defendant understands and agrees that an order for restitution is mandatory in this case under 18 U.S.C. § 3663 *et seq.*, and he agrees not to oppose the Court's entry of an order that he pay



restitution in the total amount of $416,389 to CHS or its assignee, as determined by the Court. The defendant may request that any amounts already paid to CHS from the liquidation of property forfeited administratively be credited against his overall restitution obligation.

12. **Disclosure of Assets.** The defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the defendant has any right, title, or interest, or over which the defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business owned or controlled by the defendant. The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of restitution, fines, and forfeiture ordered by the Court. The defendant agrees to complete a financial statement within two weeks of the entry of his guilty plea. The defendant further agrees to execute any releases that may be necessary for the United States to obtain information concerning the defendant's assets and expressly authorizes the United States to obtain a credit report on the defendant to evaluate his ability to satisfy financial obligations imposed by the Court. If requested by the United States, the defendant agrees to submit to one or more asset interviews or depositions under oath.

13. **Forfeiture.** The defendant agrees to forfeit to the United States,

pursuant to 18 U.S.C. § 981(a)(1)(C) in conjunction with 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the conspiracy to commit wire fraud, including but not limited to $6,335 in currency and any property seized in the investigation. The government reserves the right to seek direct forfeiture of other specific assets, a money judgment forfeiture against the defendant, and the forfeiture of substitute property pursuant to 21 U.S.C. § 853(p) as incorporated by 28 U.S.C. § 2461(c).

The defendant further agrees that the United States may forfeit all firearms seized in the investigation, and that it may complete the forfeiture of the firearms through civil, criminal or administrative proceedings. The defendant waives any deadline or statute of limitations for the initiation of any such proceedings, abandons any interest he may have in the firearms, and consents to their destruction.

14. **Debarment/Exclusion.** The defendant agrees that he and all entities in which the defendant is an owner, partner, member, or manager may be excluded from eligibility from any federal program administered, authorized by, or funded in whole or in part by the United States Department of Agriculture, including but not limited to the Risk Management Agency, the Federal Crop Insurance Program, and the Farm Service Agency, for eighteen months from the date of sentencing.

15. **Waivers.** The defendant understands that by pleading guilty he waives his right to a trial or appeal on the question of his guilt or innocence and his right to bring pretrial motions. In exchange for the concessions made by the United States in this plea agreement, the defendant hereby waives all rights all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and/or the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A. The defendant has discussed these rights with the defendant's attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

16. **Non-Prosecution Agreement.** If the defendant fully complies with this agreement, the United States Attorney for the District of Minnesota will not prosecute defendant's spouse, Courtney Crandall, or his father, Edwin Crandall Jr., for any offense arising from the factual basis set forth in this agreement or in the federal search warrant documents filed by the government.

17. **Complete Agreement.** The foregoing provisions set forth the entire agreement between the parties and no other agreements or promises have been made.

ERICA H. MACDONALD
United States Attorney

Dated: July 29, 2020

BY: ROBERT M. LEWIS
Assistant U.S. Attorney

Dated: July 27, 2020

BRYAN DALLAS CRANDALL
Defendant

Dated: July 29, 2020

STEVEN L. SCHLEICHER
ERIC J. OLSON
Attorneys for Defendant